## W. N. GRAY v. MARY E. GRAY.

### Decided June 2, 1906.

**Divorce—Voluntary Separation.**

A divorce was properly refused the husband on the ground of abandonment upon evidence showing that the wife accused him of squandering upon lewd women all that she and her children could make (which the husband denied) and declared that she would see him dead and in hell before she would live with him another year; that thereupon the husband and wife by mutual consent divided the land constituting the homestead, the wife remaining in the dwelling and the husband moving into a tenant house upon the same place. Such separation having continued for more than three years, it appearing therefrom that the husband himself performed the physical act of leaving his wife and remaining away for the statutory period.

Appeal from the District Court of Comanche County. Tried below before Hon. N. R. Lindsley.

*E. C. Gaines,* for appellant.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment denying a divorce sought by appellant from his wife. The ground alleged is predicated upon the second clause of Revised Statutes, article 2976, namely, that she had "voluntarily left his bed and board for the space of three years with the intention of abandonment." Appellee made no defense and the sole question presented to us is whether the evidence sustains the court's judgment.

The suit was filed September 6, 1905, and it is undisputed that they separated about the 1st of December, 1901, since which time they have been living apart. At the time of the separation they were living upon a farm consisting of one hundred and sixty acres, which was by agreement divided between them, appellee retaining the west eighty acres upon which was located the homestead of the parties, appellant receiving the eastern portion upon which was located a rent house and into which appellant moved after the separation. The separation was upon a written agreement to that effect, and the property was divided by arbitrators agreed upon by the parties. We quote the following from appellant's testimony as it appears in the transcript: "Q. Prior to the arbitration and since the separation, had you lived in a separate house from hers and have you so lived since that time? A. Yes, sir. After the first of

January I have been living on that place where I am now living with the exception of one year that I went to the Territory, that was the year 1903. Q. Since you came back have you lived there at that place? A. Yes. Q. Prior to the time you separated from your wife, did your wife make any statement as to whether she intended to live with you any longer? A. Yes sir, she said that she would see me dead and in hell before she would live with me another year. Q. What year was that now? A. In 1901. Q. Had you ever mentioned separating from her? A. No sir. Q. What reason did she give for not living with you any longer? A. She said that I was taking all that she and the children made and giving it to lewd women. She said that I was chasing around after lewd women and giving them all that she and the children made. Q. Were you doing that at all? A. No sir, I wasn't. Q. That was the reason she refused to live with you longer? A. Yes. Q. Did you establish yourself in a separate house from hers? A. Yes sir, there is a house on the place that I had built for a rent house and I moved in that. The men that divided the land said for me to have that till the first of January. Q. Did you go in that house? A. Yes sir. Q. Did you up to that time want to separate from her? A. No sir. Q. Did you leave her willingly? A. Yes sir, after she said she would see me dead and in hell before she would live with me and said that she could get along better without me, I told her that I wanted her to do the best she could for herself, and so I left. Q. Would you at that time and would you now, if she would agree to live with you, and convince you that she was willing to live with you, would you be willing to live with her? A. I reckon I would but she has never made me that proposition. Q. If she was to come to you in a proper way, would you live with her? A. Yes sir, but she has stated that she wouldn't live with me any more. . . . Court asks the witness: Q. Did you have a written agreement that you wouldn't live together any more? A. Yes sir. Q. Did you consult a lawyer about that? A. Yes sir. Q. Did he write up the written instrument? A. Yes sir. Q. What was that instrument? A. I don't know that I could tell you. Q. Was it an agreement that you and your wife should live 'separate? A. Yes sir. Q. Each of you signed it? A. Yes sir. Q. Agreeing to live separate? A. Yes sir. Q. You all agreed to arbitrate the property? A. Yes Sir. Q. And you deeded your land to some one and he then deeded you your part and your wife her part? A. Yes sir. Q. When you agreed to separate you had been living together on this 160 acres of land, and you left her there and she is still living at the same place? A. Yes sir. Q. You have been living on the other half of it, with the exception of the year that you were in the territory? A. Yes sir. Q. When you made that agreement with her you never did aim to live with her again? A. No sir. Q. And the reason you left is because she said what she did? A. Yes sir, she said that she would see me dead and in hell before she would live with me another year, and said that she could get along better without me than she could with me, and I told her that I wanted her to do the best she could for herself."

It thus conclusively appears that appellant, pursuant to the terms of a written agreement, himself performed the physical act of leaving his wife and remaining away from her for the statutory period. It is not

pretended that a voluntary separation thus brought about, however, long continued, affords under our law a legal ground of complaint, nor do we know of any case in which our courts have decreed a divorce under such circumstances. It is insisted, however, that appellee's language or conduct induced the agreement—justified appellant's abandonment—and that hence the wife is to be placed in the category of those specified in the statute quoted. We have searched the record carefully and we fail to find any evidence of cruelty or misconduct on the part of appellee, except that on one occasion she made the statement imputed to her in appellant's testimony. Appellant failed to state while a witness, and there is no other witness to the remark, just when or under what circumstances this declaration was made, and while appellant denied the wife's accusation against him, the court heard all of appellant's testimony, had an opportunity to observe his manner, and we feel unwilling to say that the remark of the wife constituted such an excess or cruelty as would relieve appellant from the effect of a separation voluntarily begun by him and since maintained without any effort exhibited in the record to bring about a reconciliation. The marital relation is justly regarded as one of the most sacred relations of life, and our statute expressly provides that "in all suits and proceedings for divorce from the bonds of matrimony, the defendant should not be compelled to answer upon oath, nor shall the petition be taken as confessed for want of an answer, but the decree of the court shall be rendered upon full and satisfactory evidence, upon the verdict of a jury, if a jury shall have been demanded by either party, and if not, upon the judgment of the court affirming material facts alleged in the petition." (Rev. Stats., art. 2979.)

We approve the findings of the court below and affirm the judgment.

*Affirmed.*